I think I called on you the first time around and you didn't answer. I don't know what happened. Okay, let's see if I can get it right this time. 13-5-1-2-1-0 United States of America v. Gerardo Carranza-Raudales May it please the court, my name is Brad Bogan and I represent Mr. Gerardo Carranza-Raudales. Mr. Raudales pleaded guilty to illegal reentry. At sentencing, he received a 16-level crime of violence enhancement on the basis of his prior Michigan conviction of first-degree home invasion. That was error. The Michigan statute does not qualify as a crime of violence under either prong of the relevant definition. It does not have an element of physical force against another person and it is broader than the generic definition of the enumerated crime of violence, burglary of a dwelling. Specifically, the Michigan statute is broader than the generic definition of the burglary portion of burglary of a dwelling. In order to be burglary, the offense must require that the offender have the intent to commit another crime at the time of entering or remaining in the structure. Now, the Michigan statute under which Mr. Carranza was convicted does have such an alternative. But as an alternative to entering with intent, it also punishes a situation where an offender commits another crime while entering, present in, or exiting the dwelling. And that falls outside the generic definition. In that respect, the Michigan statute is like other state statutes that this court has found to not constitute generic burglary. Specifically, both the Texas and Tennessee burglary statutes. Would you address the question of whether this was invited error by virtue of the fact that the judge brought this up at sentencing and said, you know, yadda yadda, there's a state of flux, the 16-level enhancement does in fact imply, and said, you know, do you disagree, Mr. Attorney? And the defense counsel said, no, Your Honor. So isn't that invited error at the very least here? Plain error typically comes up when nobody thought about it, wasn't mentioned, you know, just kind of goes. But here it seems like the judge is saying, you know, blah, blah, musing out loud, talking about the 16 levels. The defense counsel agrees with the judge. Shouldn't that end the day? No. But first I would note that the government has not argued that this was invited error. The government agrees that plain error review applies. But beyond that, if you read the statement in context, it's really no different from a judge asking at the outset of a sentencing hearing, are there any objections to the pre-sentence report or confirming whether or not any objections have been made. No, it is different. I mean, I understand what this judge is doing. This judge is trying to avoid a plain error. And so you say, hey, there's issues. I see this 16 level. I know that, you know, half the cases that come out of the Fifth Circuit deal with these 16 level crime of violence cases. So I'm looking at this, and it looks like while this is an area of flux, this isn't the situation that's in flux. So I find it applies. Do you agree, counsel? No problem. I think it's over as the judge. That's very specific. That's not just does anybody have any objections. I disagree. In other situations that are similar to this, this court has gone on to apply plain error review and held that such a statement does not constitute a waiver of the argument. For example, in United States v. Andino Ortega, it was also a situation where the 16 level crime of violence enhancement was being applied. And defense counsel in that case said that, well, there's case law that suggests it's just a four level, any other felony enhancement under the guideline, but there's also this case that suggests that it would qualify for the higher level and essentially conceded that the higher enhancement applied. But that turned out to be incorrect. And this court said that counsel's failure to object below, because he did not recognize the argument now being made on appeal, is not a waiver. I think the same analysis would apply in the context of invited error. Here, this is a matter of the judge essentially saying, here's what the pre-sentence report says. I agree. Do you object? And defense counsel says, in effect, no. Assuming arguendo that it's not invited error, and you're correct that castaneda is on all fours, just assume arguendo that. Given that this is complicated and there are these dueling cases going back and forth parsing this, why doesn't our precedent in the Ellis case, which says when it's very difficult and complicated on these things, you can't show that it's plain error under prong two, why doesn't that case apply here? Well, I would suggest that this case is not as complicated in Ellis. In Ellis, there was a question about exactly what the scope of North Carolina attempt liability was and whether the phraseology that North Carolina used to define attempt differed from what the generic version of the offense that the defendant offered. This case is different. The Michigan statute is very clear on its terms. It has alternative elements, and the Michigan Supreme Court in People v. Wilder has confirmed that reading in the statute. It says with respect to the element at issue here that it requires either that a defendant have the intent to commit another crime at the time of entry or that he commit the other crime while entering, being present in, or exiting the dwelling. And in light of that clarity from the Michigan statute, the Michigan Supreme Court, the clarity of the definition of burglary from Taylor v. United States, which this court has adopted and has applied to the burglary portion of burglary of a dwelling, the error is plain. Did you analyze? What is your analysis on prong four? You know, our court is very carefully looking at prong four, and I just see that you have, like, one paragraph on it. So what's your prong four analysis? Well, I would start out by saying that the government has not argued that if all the other three prongs are satisfied that the court should not exercise its discretion. You know, we can affirm for any basis supported by the record, and exercise of discretion is up to us and not up to the government. So explain to us why we should exercise our discretion to correct an error that you all not only did not object to but agreed wasn't an error. I understand, Your Honor. It's because of the size of the disparity between the sentence opposed and the correct guidelines range. Here, the incorrect guidelines range was 41 to 51 months, and that's the range that the district court relied upon. The correct range would have been 15 to 21 months. The district court sentenced Mr. Carranza to 45 months, anywhere from two to three times what the correct range would have been. And this court has consistently, in situations where there is such a disparity, not only found that the error has affected substantial rights under prong three, but also found that such a substantial error affects the fairness, integrity, and public reputation of judicial proceedings, particularly in circumstances where, as here, the district judge did not suggest that he acknowledged or considered any other range that might be applicable and went on to say that, well, the court would impose the same sentence regardless. Instead, the court considered only this range. It was incorrect and it was dramatically higher than what the correct range was. So where do we draw the line between what should be reversed and what should say it's harmless because it's only a year or it's a year and a half or it's two years? If we're just looking at the length of the sentence, is there some measurement where we can say this is okay but this is not? Well, had the district court relied on the correct guidelines range and imposed a sentence within that range, Mr. Carranza would probably already be out of prison by now. He's been in for, let's see, he was arrested for this offense in April of 2013, so he's been in prison approximately 21, 22 months. Had he received the high end, 21 months, he would have already completed that time. Did you seek to expedite this appeal? No, I did not. I really question why that isn't done in these cases. I mean, I see this a lot where the range you're arguing for is already gone. I mean, if you really believed in your argument, it would seem like you'd be really trying to get this expedited so that we could consider it at a point where your client might benefit from it. I mean, I realize it benefits some if he gets a 21-month because that's against a 41-month, but if you're right, then he should already be out, then every day he's in jail or prison or whatever is a problem. So why didn't you seek to expedite it? I don't know that I have an answer that would be satisfying to the court. The fact of the matter is that I didn't recognize the issue until sometime into the appeal, and that's because we have a very high caseload in my office. I recognize that's not an excuse, but managing such numbers makes it difficult to identify certain errors at an early stage of the proceeding sufficient to seek to expedite. Well, maybe you can pass the word on that that kind of thing needs to be done because I think in these cases where we're talking about short sentencing time frames, there needs to be a recognition of that and not this leisurely briefing and kind of due course approach, but an effort, and we may or may not grant expedite relief. I'm not saying we will. But at least now where somebody's in 20 years and they're asking for 15 years, that's not an expedite. But these situations that are very short time frames, I see this a lot, even to the point where some of them become moot on appeal, and I just think it's a concern. I understand and share your concern, Your Honor. And we have granted expedited relief in a number of these with short sentences, and I'm not saying that in this case we would have, but we have done that quite a few times when asked to do so. Explain to me why the residual clause wouldn't apply. I'm sorry, the force element clause, the clause that requires? Let's assume our president makes clear that Carranza-Ridales' conviction was not generic burglary. Yes. On plenary review, can we affirm on the alternative base that the precedent on the residual clause issue is unclear, like the Ellis point? I'm sorry, but I'm not sure I understand. Okay. You go on and you argue what you want to argue. Okay. Well, I can address what I think the concern is. Under the crime of violence definition that applies to Guideline 201.2, an offense qualifies either if it is an enumerated offense or if it is an offense that has as an element the use, attempted use, or threatened use of physical force against the person of another. Nothing in the text of the Michigan home invasion statute requires force against another person. Now, other crimes of violence definitions have slightly different, say, residual clauses. For example, there's a crime of violence definition in 18 U.S.C. Section 16, which is incorporated within the aggravated felony definition. And under Section 16, that extends to offenses that are felonies and that by their nature involve a serious potential risk that physical force will be used against another person or property in the course of committing the offense. And for that reason, burglary does qualify as an aggravated felony, although the Michigan home invasion, first-degree home invasion, would qualify as generic burglary for purposes of the aggravated felony definition, but not for the 16-level crime of violence definition because it lacks an element of force against another person. Okay. Thank you. I think you did answer my question. I don't have anything to add to what's in my brief, so I'm happy to entertain any other questions that the court may have. But if there are not any, I'll cede the podium to Ms. Blatt.  May it please the court and counsel, Mara Blatt for the United States' appellee in this matter. My presentation here today I hope will be pretty straightforward, and that is that in a nutshell, the issue before this court is whether the statute of prior conviction is missing Well, the issue is that the statute of prior conviction is missing the word intent. Carranza characterizes this as the entering without intent alternative and argues the statute is fatally deficient as a crime of violence. The government contends that the word may be missing from the subsection, but that the case law that interprets this statute adopts the intent requirement into that subsection and that the statute fully falls within Taylor and 2L1.2's definition of generic burglary, which is the unconsented to or remaining in a dwelling with intent to commit a crime. Why should the government's position succeed here? Because the Michigan Supreme Court holds that the state has to prove that the defendant had the intent I'm quoting here, the intent to commit a felony, larceny, or assault while entering, present, or exiting the dwelling. Actually, that's a quote from Washington, which is the case that the government You said on your 28J? We did. I have a question about that. You very appropriately and professionally apologized for quoting something from Silver in your previous brief that was inapplicable because it's the wrong statute. But isn't Washington, according to the Federal Public Defender's 28J, this Washington suffers from the same problem? I think you would have been very sensitive to the fact that you had made an error and very professionally acknowledged it. Did you make the same error again, or is it not the same error? Quite honestly, after looking at everything and finally getting ready for all of this, I think that actually I was right in the first instance. But I will stand by the statement that I made to the Court that the reliance may have been misplaced. However, and I think this is important, Washington doesn't only explicate Silver, although Silver is very helpful for the government, however, it also explicates Wilder. And Wilder is the case upon which the defendant relies. And Wilder was charged in the same way that Carranza does. If you look at page 45 of the Wilder opinion, you'll see that he was charged that he entered a dwelling without permission, unconsented to entry, and that the defendant while present in the dwelling committed a larceny. This is exactly the same way that the defendant here was charged. And Washington does explicate Wilder in the same fashion, and in a fashion that is not consistent with Carranza's view of this case. What is your view on invited error? The exchange between the district court and the counsel below on this 16-level issue. I believe that this Court's precedents vary widely as to whether or not something can or cannot be considered invited error. It is true that we did not raise the issue as invited error, but I do believe that there is certainly an argument to be made that he did. It was my strategic judgment. I'm just looking at the practicalities of it. How is a district court ever going to be able to avoid plain error if the district court raises something? Nobody's raised it. The district court takes it upon itself to raise it, and the counsel goes, you're right, Judge, and that still isn't good enough to satisfy the appellate court. I mean, it just seems problematic for district courts. I think it is. It's a problem with this entire area of crime and violence, but I think it does also definitely speak to whether or not this error was clear or plain, and it also does speak to whether or not there was any manifest injustice in this case. So if we don't consider it to be invited error, we could weigh this exchange as part of the fourth-prong analysis? Yes, and I think this Court's precedents fairly stand for that. I think that what's involved in this case is that there is a continuum that exists in this Court's precedents with regard to crime of violence generally and certainly with regard to burglary. One end of the continuum is Texas Penal Code 30.02A1. That case stands, that's where there is the definite requirement of an unlawful entry and that the intent to commit the crime occurs contemporaneous with the unlawful entry. The Court says those cases are definitely crimes of violence. On the other end of the continuum is the Tennessee statute that was cited by the defense. And in those cases, the statute is solely keyed to entry. Entry and commission of a crime. The government maintains that this case falls somewhere in the middle of this spectrum, which may be what this, that's what this Court has to decide. Is it more like a crime of violence than not? The government would say, yes, it is. And the reason why is because this language of this statute is phrased in the active voice. It is, while entering, you commit a larceny. In other words, there is no temporal break between the entry and the commission of the crime, which is like Texas 30.02A3, not a crime of violence. This statute is more like the 30.01A1, which says that while you are entering, you are committing a larceny. There is no way to temporally break that with this statute. If you were, while entering, you committed a larceny, the State has to prove that you had the intent to commit the larceny in order to charge you with a larceny. So you can't suddenly say that there is no intent simply because the statute doesn't have the word. The intent is built into the fact that you actually commit a crime while you are entering. But what if it's going to be cold in New Orleans tonight and there's a homeless person that's looking for shelter and breaks into an empty building looking for a warm place to spend the night? Is that a violation? No, it's not. And the Michigan courts are quite clear about that. Breaking and entering is very different from... Yeah, but if that homeless person, so they're just looking for a place to sleep and breaks in, but it turns out that a woman's purse is sitting in there with some money in it. So having had no intent whatsoever to do anything once in there but sleep, all of a sudden temptation overwhelms, steals and let's say it was a lot of money enough to be a felony or whatever, a thousand dollars, whatever it is. Now what? Would Michigan find that to be a violation of this statute? And if so, does that meet the generic definition? No. Because the intent was formed later. No, I don't think that under the Michigan statute you would find it. And I think that that is why the Michigan courts say you have to have, even for this prong, you have to have the intent, there has to be evidence of the intent to commit and how we find that evidence of intent to commit is that you actually commit the crime while you were entering. But here we have a person stealing the money that committed the crime. But they just, when they went in the building, had absolutely no intent to do that. Really was just looking, as Judge Prada said, for a place to sleep. I understand what you're saying. For example, look at the facts of Washington. Do we have any case, because Michigan's a cold place. I bet there's a lot of people trying to find shelter. So do we have any cases that would maybe give us this kind of because I realize a lot of people do break in looking to steal and so there's not this complexity of the time in which the intent was formed. But you can have a circumstance of somebody sort of innocently finding their way into a place and then deciding to commit a crime. I was not able to find a statute that had a similar construction to this one where the phrasing, again, is in the active voice, where it says, while entering, the defendant commits a larceny. I could not find that case law in the Fifth Circuit. I think that's exactly why the district court looked to the Sixth Circuit cases. And I think that I know that Carranza contends that there's no way we can tell what the case was, but I think that we can. Because the district court says on sentencing, you know, I looked at this carefully. And he says, I found that there is a case that this statute is a crime of violence. And the only cases that discuss this statute in the context of crime of violence are the Sixth Circuit cases. I feel confident that if there was a statute one way or the other that said that this was a crime of violence or was not a crime of violence outside of the Sixth Circuit case law, I think that either Mr. Bogan or I would have found it. And it's used in the Sixth Circuit. That's right. Unless it would be likely to look at that. But Michigan itself hasn't opined on the homeless person wandering into the building and ultimately committing a crime. No, but if you compare your hypothetical, for example, to the facts of Wilder or to the facts of Washington, it becomes clear. For example, in Washington, he is found in the house rummaging through a dresser. He has a bottle of vodka with him that was taken out of the victim's refrigerator. So there's evidence that upon entry, he committed this larceny. And so I think they are fact driven as any inquiry is with regard to intent. But I think that the Michigan State cases are quite clear and I think this is why they say, that's exactly the evidence that the State has to prove. that there was an intent and that's the only way that we can affirm the conviction. I want to go back to Washington for just a second here, because number one, it definitely construes the version of 750.110A that Carranza was convicted of. It holds that first degree home invasion, which is actually what he was convicted of, is distinguished from third degree, because a person that is a victim who is lawfully present in the house and there is an intent to commit a misdemeanor or a felonious assault or a larceny. And this is Washington citing Wilder. This is the case that Carranza relies upon. Again, Wilder was charged the same way that Carranza was. And this interpretation is directly contrary to Carranza's reading of Wilder. You can't just look at the words of the statute. You certainly, well, you could. But you can't look at the words of the statute alone if you have precedent from the State court, which is what Silver, which is what Washington, which is what Wilder are saying. We have a case law that says you can't just envision some imagined way that the statute could be interpreted that wouldn't fall within the definition. It needs to actually be a realistic probability. We have that in this whole line of cases about administering drugs that have come out recently. And so I agree with you. We can't just say hypothetically it's possible that Michigan could charge this. We have to say is there a realistic probability that the version that would favor Mr. Carranza would be applied? Actually, that's certainly true. And no cases have been offered with regard to the theoretical possibility. But I'm also propounding to the court that we have case law that does actually interpret this statute. And therefore, we can't just look at the bare words beyond the theoretical possibility. And I think that what Mr. Carranza is doing is he's looking only at the words. And he's not interpolating either Sixth Circuit law or, more importantly, Michigan Supreme Court law with regard to this. Does the court take a position about whether the Michigan statute has as an element of the offense the use, attempted use, or threatened use of force? We do not claim that this statute would fall under the use of force strand, no. The only issue before the court is whether or not this constitutes generic burglary. So we could not alternatively hold for you on that? You don't believe it qualifies? As an officer of the court, you believe it doesn't constitute force? No. Okay. Thank you. I think this is either generic burglary or it isn't. Is it important that we decide whether it is or not? Do we have a lot of these from Michigan does the court indicate how to interpret the statute? Is it likely to come up again? Well, I think this type of statute is likely to come up again. That's why you said Michigan is the only one like it. No. I said that in this court I could not find a case where this court interpreted a statute that had a similar construction. Are there a lot of states that have a statute like Michigan? There are states that have the element of while entering and they talk about a predicate crime. And I am not going to claim to be an expert on 50 states' statutory constructions. Just in my time, though, I have seen statutes that are similar. I haven't seen this particular construction, but that's kind of off the top of my head. I haven't seen that. But I think it still is important because the way that the Michigan state courts talk about the intent requirement here really goes to every single one of the types of ways that this could be committed. And again, we are in a situation where if we don't have the Shepard documents, if we can't prove how they are charged, if they can't prove well, they were charged this way, but they pled to something else, if we can't prove that, and that happens sometimes, it is important for the court to speak about why this would be a crime of violence. Because that would settle the matter. We do. And in fact, I supplemented the record with those here. But sometimes they just simply are not available. And we just have no way, you know, we have no way of making that final determination. Again, it's the government's position here that categorically, not modified categorically, categorically, this is in fact a crime of violence under Taylor. Also, Washington talks about how first degree home invasion is distinguished from breaking and entering, which Judge Haynes was your question. And it says on page 10, and here it is citing Silver, by the intent to commit a felony larceny or assault once in the dwelling. This again supports the notion that there is no temporal break in the entry and in the commission of the crime. And I would urge the court to look at the footnote on page 390, footnote 3, in Silver. Because the statute that it quotes, and it quotes it in relevant part, includes the subsection of which Carranza was convicted. So I think in the end, both Carranza and the government may have been wrong in their assumption that Silver was limited to this predecessor statute. And finally, if you look at following Silver, there are many unpublished cases that mirror Silver's language. However, I put Washington forward because although it is unpublished, the Michigan Supreme Court affirmed the decision by refusing to hear it on case review. Finally, the Sixth Circuit cases, there are eight cases spanning ten years, ten sitting circuit court judges, one former, one present chief judge, but Carranza claims that all of those people were wrong. Clearly this court is not bound by Sixth Circuit law, but in tandem with Michigan State law, it really does show that intent really is required, even with the... The court at least shows that any error isn't plain. Yes. If it's confused, then it can't be that plain. Absolutely. And finally, with regard to manifest injustice, the record here very fairly reflects that the district court imposed its sentence based on its 3553A analysis. It did so after it refused a downward departure. So the court was clearly aware of the panoply of options that it had in front of it. The statement of reason says the court finds no reason to assess a sentence outside the range. But that doesn't tell you that it would give that sentence regardless of the range. That's what the kind of thing we're looking for. To say the court stayed within the range does not it doesn't elaborate on the point you're making. Well, and I think it does, though, in this case, because again, the court denied the downward departure. So the court wants to be in the right range, and I'm going to sentence in the range. So if we're in the wrong range, it doesn't tell us what the court would have done, unlike a statement that says, I think this is the right sentence under the factors, and I'm going to give it no matter what the range is. And we've seen lots of those kind of statements in the record. That's true. May I? Sure. But in this case, the court on actual sentencing says when imposing actual sentence said, looking, I'm quoting here, looking at the 3553A factors, it is the judgment of the court that the defendant is hereby committed for a term of 45 months. I think that in tandem with the denial of the downward departure shows I'm getting another question on that, because have we ever said, I've followed the factors, and the factors in conjunction with the guidelines show this is the right sentence, that that shows the court would have given that sentence anyway? Do we have any case at all in the vast history of this court that does what you are asking us to do on that point? Isn't that an overreach? I think there are cases that where the court has said, look, I'm doing this pursuant to the 3553A factors. And I would do this anyway. There are lots of cases that say that. There's not one that we've ever said when they said it was pursuant to the factors and they didn't add the second part that that was good enough. You name one case. Not off the top of my head, but I would ask the court to allow me to file a 28J if I can find one. Have fun. Okay. Thank you. Please affirm the sentence. Get us something in a week or so? Oh, yeah. Okay. Thank you, Ms. Blatt. Mr. Bogan? The government keeps insisting that under Michigan case law, intent to commit another crime at the time of entry is required, even under the current version of the statute. And that is simply not the case. If you look at Wilder itself, Wilder was initially charged with first-degree home invasion as well as some firearms offenses. He was ultimately convicted of a lesser-included offense of third-degree home invasion. But if there's only a theoretical possibility that somebody will be charged who lacks the intent, then under our case law aren't we bound to say, well, this does meet the statute, or at least that it's not plain error for a court to conclude that it does? Well, there is no theoretical possibility because Carranza himself was charged only under the statutory alternative of committing a larceny while entering, present in, or exiting the dwelling. The indictment, which, as the government mentioned, it supplemented the record with, does not allege the entering with intent alternative. And as Wilder makes clear, that is an alternative to the other element. And I'd like to address the government's argument about temporality, that by committing another offense while entering, that that necessarily means that there was an intent to commit that other offense at the time of entry. But under the statute, it requires that the other offense be committed while entering, present in, or exiting. While, excuse me, Carranza was charged with all three in his indictment. So we don't know which of those three alternatives underlay his conviction. Even assuming that entering with intent, or excuse me, committing another crime while entering evidences intent, and there's no case authority for that proposition, his conviction could have rested on committing the other offense while present in or exiting. What about just saying, you know, the Sixth Circuit has the most experience of the circuits in dealing with Michigan law. They've held what they've held, and that's at least enough to say that the error isn't plain. Well, I would say that this Court is equally qualified to judge that, and in fact possibly more so given the large volume of 1326 cases that this Court sees, which involve this very enhancement. I mean, as you all are well aware, as the Court is well aware, there's an enormous volume of case law on the crime of violence enhancement. And there are several on-point decisions regarding this type of element from this circuit holding that that falls outside. I'm not construing this statute. And, I mean, we did say in Ellis when it's hard and confusing, it's not plain error. And here, at a minimum, it's confusing if the Sixth Circuit's going away different than you're arguing. I mean, we have to at least, while that may not carry the day on the merits, it at least creates an atmosphere in which we can say this is confusing enough that the error isn't plain, right? I disagree. I don't see any confusion because none of the Sixth Circuit cases, as I have read them, addressed this specific issue, namely whether this particular element takes the Michigan home invasion statute outside of the definition of generic burglary. But they've applied it as a 16-level. And that's what the district court apparently relied on. Well, in some of those cases, I don't remember the details of each of them, but in at least some of them, either it appears that the Sixth Circuit was considering a conviction under the previous version of the home invasion statute, or it's unclear from the opinion which version of the Michigan home invasion statute was at issue. So given that lack of clarity in the Sixth Circuit case law, contrasted with the clarity in this circuit regarding this type of element, I think it's not only error and it is definitely plain. And I'd just like to correct one thing Ms. Blatt said about silver. It's true that in the footnote she mentioned it quotes the current version of the Michigan home invasion statute, but if you look at the facts, the offense occurred on October 12th, 1997. The current version of the statute came into effect on October 1st, 1999. So it appears that when silver quoted the current version, that was likely just a mistake. Can you show a remarkable attention to detail? Thank you, Your Honor. And with that, I don't have any other points to mention. Okay. Thank you. Thank you.